UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 24cr10328 LTS |
| | ) | |
| v. | ) | Violation: |
| | ) | |
| JOSEPH IZSAK, | ) | Count One: |
| | ) | Conspiracy to Commit Securities Fraud |
| Defendant | ) | (18 U.S.C. § 371) |
| | ) | |
| | ) | Forfeiture Allegation: |
| | ) | (18 U.S.C. § 981(a)(1)(C) and |
| | ) | 28 U.S.C. § 2461(c)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1.    Defendant JOSEPH IZSAK lived in Florida.

2.    Victim Law Firm A ("Law Firm A") was one of the largest corporate law firms in the world by revenue and operated in countries around the world.

3.    Nicolo Nourafchan lived in New York and California.  From in or about 2021 to 2023, Nourafchan worked on mergers and acquisitions as a corporate associate at Law Firm A.

4.    Gavryel Silverstein lived in Florida and was a close friend of Nourafchan.

5.    Simon Fensterszaub ("S. Fensterszaub") lived in New York and Florida and was a brother-in-law of Silverstein.

6.    IZSAK was friends with Silverstein and S. Fensterszaub.

7.    iRobot Corporation ("iRobot") was an American technology company.  At relevant times, iRobot traded on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol IRBT. On or about August 5, 2022, iRobot and Amazon.com, Inc. ("Amazon") announced a definitive agreement under which Amazon agreed to acquire iRobot.  Law Firm A represented iRobot in

connection with its acquisition by Amazon.  At the time of the announcement of iRobot's acquisition, Nourafchan worked for Law Firm A and owed duties of loyalty, trust, and confidence to Law Firm A and its clients.

8.  Qualtrics International Inc. ("Qualtrics") was an American experience management company.  At relevant times, Qualtrics traded on the NASDAQ under the ticker symbol XM.  On or about March 13, 2023, Qualtrics announced a definitive agreement under which Silver Lake and Canada Pension Plan Investment Board (collectively, "Silver Lake") agreed to acquire Qualtrics.  Law Firm A represented Qualtrics in connection with its acquisition by Silver Lake. At the time of the announcement of the acquisition of Qualtrics, Nourafchan worked for Law Firm A and owed duties of loyalty, trust, and confidence to Law Firm A and its clients.

Overview of the Conspiracy

9.  Beginning no later than July 2022 and continuing through at least March 2023, IZSAK conspired with Nourafchan, Silverstein, S. Fensterszaub, and others known and unknown to the U.S. Attorney to obtain material non-public information ("MNPI") about the merger-and-acquisition activity of various publicly-traded companies and to execute securities trades while in possession of that MNPI.  As part of the conspiracy, Nourafchan and others obtained MNPI from corporate insiders, including MNPI that Nourafchan misappropriated from his employers and their clients.  Nourafchan and others then passed that MNPI to individuals whom Nourafchan recruited to join the conspiracy as traders, as well as individuals serving as middlemen, including Silverstein. Those middlemen then recruited traders and passed the MNPI to those traders, including S. Fensterszaub, who then agreed to trade securities while in possession of the MNPI and to recruit other traders, including IZSAK, to trade while in possession of that MNPI.  In exchange for the MNPI from Nourafchan and others, Silverstein, S. Fensterszaub, and other traders agreed to share

a portion of their insider trading proceeds with Nourafchan and other co-conspirators, in transactions designed to conceal and disguise the nature, location, source, ownership, and control of those proceeds.

Object and Purposes of the Conspiracy

10.    The object of the conspiracy was to commit securities fraud by trading in the securities of various companies while in possession of MNPI about those companies.  The principal purposes of the conspiracy were to make money and to conceal the conspirators' actions from others, including regulators and law enforcement.

Manner and Means of the Conspiracy

11.    Among the manner and means by which IZSAK, Nourafchan, Silverstein, S. Fensterszaub, and others known and unknown to the U.S. Attorney carried out the conspiracy were the following:

a.    Recruiting attorneys and other corporate insiders, who had access to MNPI about the merger-and-acquisition activity of publicly traded companies;

b.    Misappropriating and sharing that MNPI, in violation of the duties of loyalty, trust, and confidence the attorneys, including Nourafchan, owed to the sources of the MNPI, including the attorneys' employers and their clients;

c.    Recruiting co-conspirators who agreed to trade in the securities of public companies while in possession of MNPI in exchange for an agreement to share in the profits generated by their insider trading;

d.    Trading in the securities of those companies while in possession of MNPI about them;

3

e.    Transferring proceeds of the illicit trading to corporate insiders and other co-conspirators in cash and other transactions designed to conceal and disguise the nature, location, source, ownership, and control of the insider trading proceeds; and

f.    Taking steps to conceal the conspiracy from regulators and law enforcement, including by communicating about the MNPI in person and via encrypted messaging applications, using coded language, and transferring proceeds in cash.

Overt Acts in Furtherance of the Conspiracy

12.    Beginning no later than in or about July 2022 and continuing through at least March 2023, IZSAK, Nourafchan, Silverstein, and S. Fensterszaub, together with others known and unknown to the U.S. Attorney, committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

*iRobot*

13.    In or about June and July 2022, after Nourafchan misappropriated MNPI from Law Firm A and its client iRobot regarding the company's potential acquisition by Amazon, and after Silverstein received that MNPI from Nourafchan, Silverstein passed the MNPI to traders, including S. Fensterszaub, pursuant to an agreement under which traders like S. Fensterszaub would trade in possession of the MNPI, share the proceeds from that trading, and recruit additional traders, like IZSAK, to do the same.

14.    On or about July 15, 2022, IZSAK began to purchase iRobot securities while in possession of MNPI regarding the potential acquisition.

4

15.     From on or about that day to on or about July 20, 2022, while in possession of MNPI regarding the potential acquisition, IZSAK purchased more than 3,000 iRobot shares.

16.     On or about August 5, 2022, following the announcement regarding iRobot's acquisition, IZSAK sold all of the iRobot shares he held.

*Qualtrics*

17.     In or about February and March 2023, after Nourafchan misappropriated MNPI from Law Firm A and its client Qualtrics regarding the company's potential acquisition by Silver Lake, and after Nourafchan gave that MNPI to Silverstein, IZSAK received that MNPI and traded Qualtrics securities while in possession of it.

18.     On or about March 10, 2023, IZSAK purchased nearly 600 Qualtrics shares while in possession of MNPI regarding the potential acquisition.

19.     On or about March 15, 2023, following the announcement regarding the acquisition of Qualtrics, IZSAK sold all of the Qualtrics securities he had purchased.

COUNT ONE
Conspiracy to Commit Securities Fraud
(18 U.S.C. § 371)

The U.S. Attorney charges:

20.    The U.S. Attorney re-alleges and incorporates by reference paragraphs 1 to 19 of this Information.

21.    From in or about July 2022 and continuing through at least March 2023, in the District of Massachusetts and elsewhere, the defendant,

JOSEPH IZSAK,

conspired with Nicolo Nourafchan, Gavryel Silverstein, Simon Fensterszaub, and others known and unknown to the U.S. Attorney to commit securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5, to wit: knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly to use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which would and did operate as a fraud and deceit in connection with the purchase and sale of securities.

All in violation of Title 18, United States Code, Section 371.

6

<u>FORFEITURE ALLEGATION</u>
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

22.    Upon conviction of the offense charged in Count One, the defendant,

JOSEPH IZSAK,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

23.    If any of the property described in Paragraph 22, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred or sold to, or deposited with, a third party;

   c.  has been placed beyond the jurisdiction of the Court;

   d.  has been substantially diminished in value; or

   e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 22 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United

States Code, Section 2461(c).

JOSHUA S. LEVY
ACTING UNITED STATES ATTORNEY

By:    */s/ Ian J. Stearns*
KAITLIN R. O'DONNELL
IAN J. STEARNS
Assistant United States Attorneys